## LITTLE *v.* WILLIAMS.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 8.   Submitted October 30, 1913.—Decided December 1, 1913.

In this case, *held* that the interpretation by the State Court of a stipulation of counsel was not open to review in this court as not raising any Federal question although there were Federal questions involved in the case.

The Swamp-Land Act of September 28, 1850, c. 84, 9 Stat. 919, did not in itself operate to invest the States with swamp and overflowed lands. While the act was a grant *in præsenti* and gave an inchoate title, identification and patent were necessary to vest fee simple title in the State.

A duly legalized agreement between a State and the United States that the former accepts lands theretofore patented to it under the Swamp-Land Act as its full measure of land due thereunder extinguishes whatever inchoate title it or any of its political subdivisions may have in any swamp lands not already patented to it.

A levee district is a mere political subdivision of the State creating it and is bound by the action of the State; and so *held* that a relinquishment by the State of Arkansas of all lands in which it had merely an inchoate title under the Swamp-Land Act operated also to relinquish

the title thereto of the levee districts to which the State had previously conveyed such lands. *Rogers Locomotive Works* v. *Emigrant Company,* 164 U. S. 559.

88 Arkansas, 37, affirmed.

THE facts, which involve the construction of the Swamp-Land Act of 1850 and the title to certain lands in Arkansas, are stated in the opinion.

*Mr. Henry Craft* for plaintiff in error.

No counsel appeared for defendants in error.

*Mr. Solicitor General Davis* for the United States as *amicus curiæ.*

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was a suit to quiet the title to about 1,200 acres of land in Mississippi County, in the State of Arkansas, lying within the meander line of what was represented on the plats of the United States survey as Walker's lake. The plaintiff claimed title through (a) the act of Congress of September 28, 1850, 9 Stat. 519, c. 84, granting swamp and overflowed lands to the State, (b) an act of the state legislature in 1893 (Laws Ark. 1893, p. 172) granting to the St. Francis Levee District "all the lands of this State" lying within that district, and (c) a deed of March 11, 1903, from the levee district to the plaintiff. The defendants, in addition to denying the plaintiff's title, asserted title in themselves in virtue of their ownership, under swamp-land patents from the United States to the State and from the State to their grantors, of fractional sections abutting on the meander line of the lake. After a trial, the chancery court of the county entered a decree dismissing the complaint on the merits, and the decree was affirmed by the Supreme Court of the State. 88 Arkansas, 37.

The material facts, due regard being had for the findings of the Supreme Court, are these: The lands in the vicinity of Walker's lake were surveyed, in 1847, into two fractional townships, made so by meandering and excluding what the surveyor designated as the lake; but the meander line, instead of approximately following the margin of the actual lake, a small non-navigable body of water, was run about a mile distant therefrom, along a slash or slough which the surveyor probably mistook for the outer portion of the lake. The land in controversy, although then wet and swampy, as were also the lands outside the meander line, was not part of the bed of the lake, but lay between its bank, which was well defined, and the meander line. After the enactment of the Swamp-Land Act, the surveyed lands in the two townships were listed by the Secretary of the Interior as swamp lands and were patented to the State under that act, and the fractional sections abutting on the meander line and opposite the land in controversy were then patented by the State to the defendants' grantors. The unsurveyed land within the meander line was never selected by the State, or listed by the Secretary of the Interior, as swamp or overflowed land; nor was it ever patented to the State.

As part of a compromise and settlement between the State and the United States, negotiated in 1895 and approved by the state legislature in 1897 and by Congress in 1898, the State, subject to certain exceptions not here material, accepted the lands theretofore patented, approved or confirmed to it under the Swamp-Land Act as the full measure of lands due to it thereunder, and relinquished to the United States all other claims or demands, adjusted or unadjusted, growing out of that act. Senate Report No. 76, 54th Cong., 1st Sess.; Laws Ark., 1897, p. 88; 30 Stat. 367, c. 229.

In disposing of the case the Supreme Court of the State, after observing that the plaintiff must recover, if

at all, upon the strength of her own title, and not upon
the weakness of that of her adversaries, held (a) that, as
the land in controversy had not been selected, listed or
patented as swamp or overflowed land under the Swamp-
Land Act, the title thereto remained in the United States,
unless it had passed to the State as a riparian owner in
virtue of the patents for the adjoining fractional sections;
(b) that if the title had so passed to the State it in like
manner had passed thence with those sections to the de-
fendants' grantors prior to the grant of 1893 to the levee
district; and (c) that in view of the State's relinquishment
under the compromise and settlement of 1895, the plain-
tiff, as a subsequent vendee of the district, was not in a
position to question the riparian rights asserted by the
defendants.

In the chancery court it was stipulated by counsel, for
the purpose of avoiding the production of other evidence
upon the subject, that "the townships including Walker's
lake, as meandered on the map," were listed by the Secre-
tary of the Interior as swamp lands and patented to the
State under the Swamp-Land Act, and one of the contro-
verted questions in the Supreme Court was whether this
stipulation, rightly interpreted, meant that the listing
and patenting embraced all the lands which would have
been within the two townships if the township and sub-
divisional lines had been extended over the area repre-
sented on the plat as the lake, or only the surveyed lands,
that is, those lying without the meander line. The court,
having recourse to the plats of the survey as produced
in evidence (which represented the townships as fractional
by reason of the exclusion of the meandered area from the
survey), as also to the Government's well known practice
of patenting lands according to the legal subdivisions
shown upon the plats, held that the stipulation should
be taken as referring to the fractional townships, and not
to the unsurveyed lands within the meander line; and in

that connection it was said: "It is evident that the parties meant only the surveyed lands appearing on the plat, leaving all questions as to the character of the unsurveyed territory and title thereto open to further proof and adjudication." This is assigned as error, but as no Federal question was involved, but only the proper interpretation of a stipulation of counsel, the ruling is not open to review by this court. It is not as if the patents had been in evidence and the question had been one of their interpretation or legal import. See *French-Glenn Live Stock Co.* v. *Springer*, 185 U. S. 47, 54.

In view of the finding that the land in controversy was never patented to the State, it will be perceived that a pivotal question in the case is, whether the Swamp-Land Act of 1850 in itself operated to invest the State with the title in any such sense as to be of present avail to the plaintiff. The state court answered the question in the negative, and the correctness of that ruling is now to be passed upon.

Although the terms of the first section of the act denote a present grant to the State of the "swamp and overflowed lands, made unfit thereby for cultivation," the second section lays upon the Secretary of the Interior the duty of identifying and listing the lands coming within the terms of the grant and of causing patents therefor to be issued to the State "at the request of" its Governor, and then declares: "and on that patent the fee simple to said lands shall vest in the said State," subject to the disposal of its legislature. It became necessary, in *Rogers Locomotive Works* v. *Emigrant Company*, 164 U. S. 559, to determine the meaning and effect of the act in the light of these provisions and of prior decisions, and it was there said (p. 570): "While, therefore, as held in many cases, the act of 1850 was *in præsenti*, and gave an inchoate title, the lands needed to be identified as lands that passed under the act; which being done, and not before, the title

became perfect as of the date of the granting act." And again (p. 574): "It belonged to him [the Secretary of the Interior], primarily, to identify all lands that were to go to the State under the act of 1850. When he made such identification, then, and not before, the State was entitled to a patent, and 'on such patent' the fee simple title vested in the State. The State's title was at the outset an inchoate one, and did not become perfect, as of the date of the act, until a patent was issued." What was there said has since been regarded as the settled law upon the subject. *Michigan Land & Lumber Co.* v. *Rust,* 168 U. S. 589, 592; *Brown* v. *Hitchcock,* 173 U. S. 473, 476; *Niles* v. *Cedar Point Club,* 175 U. S. 300, 308; *Ogden* v. *Buckley,* 116 Iowa, 352; *Birch* v. *Gillis,* 67 Missouri, 102; *Carr* v. *Moore,* 119 Iowa, 152, 159.

As this land was never so identified, and, so far as appears, its identification was never even requested by the State, it follows that, even if at the date of the act the land was in fact swamp or overflowed, the State never acquired more than an inchoate title to it, a claim which was imperfect both at law and in equity.

We have seen that by the compromise and settlement of 1895, which was approved by the state legislature and by Congress, the State accepted the lands theretofore patented, approved or confirmed to it under the Swamp-Land Act as the full measure of lands due to it thereunder, and relinquished to the United States all other claims or demands, adjusted or unadjusted, growing out of that act. Without any doubt this extinguished the State's inchoate title and estopped the State from thereafter asserting that title or demanding a patent.

Assuming that the inchoate title had then passed to the levee district under the act of 1893, was the district in any better situation than the State? The answer turns upon the relation of the one to the other. The district was a mere political subdivision of the State, created by the

latter, anc. invested with authority to construct and maintain levees to protect lands within its limits from overflow by the waters of the Mississippi River, and to levy and collect taxes and take other measures to that end. Laws Ark., 1893, pp. 24, 119. It was essentially a subordinate agency of the State, was exercising a power of the State for its convenience, could have no will contrary to the will of the State, held its property and revenue for public purposes, and was in all respects subject to the State's paramount authority. In view of this relation, we are quite clear that the State's action was binding upon the district, and that the latter could not by its subsequent deed to the plaintiff invest her with a title which it no longer possessed. In this respect the case is not distinguishable from *Rogers Locomotive Works* v. *Emigrant Company,* 164 U. S. 559, 576, 577.

We conclude, therefore, that the plaintiff was without title and could not maintain the suit. This renders it unnecessary to consider whether, in point of Federal law, the riparian rights asserted by the defendants are ill or well founded.

*Decree affirmed.*