## CHAPMAN & DEWEY LUMBER CO. *v.* ST. FRANCIS LEVEE DISTRICT.

### ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 82.   Argued December 12, 1913.—Decided January 26, 1914.

Whether particular lands patented by the United States to a State have passed from the latter to one or the other of two persons claiming adversely through the State is a question of local law, but whether the patent from the United States embraced the lands is a Federal question.

Where public lands are patented "according to the official plat of the survey returned to the General Land Office by the Surveyor General," the notes, lines, landmarks and other particulars appearing upon the plat become as much a part of the patent, and are as much

to be considered in determining what it is intended to include, as if they were set forth in it.

The specification in a patent of the acreage of the land conveyed is an element of the description, and, while of less influence than other elements, is yet an aid in ascertaining what land was intended.

A patent for "the whole" of a township "according to the official plat of the survey" is here construed, in view of what appeared upon the plat and of the acreage specified in the patent, as embracing the whole of the surveyed lands in the township, but not an unsurveyed area, approximating 8,000 acres, which was represented upon the plat as a meandered body of water.

The Swamp Land Act of 1850 in itself passed to the State only an inchoate title, and not until the lands were listed and patented under the act could the title become perfect.

The compromise and settlement negotiated in 1895 between the United States and the State of Arkansas, whereby the latter relinquished its inchoate title to all swamp lands not theretofore patented, approved or confirmed to it, is binding on the St. Francis Levee District as a subordinate agency of the State. *Little* v. *Williams*, 231 U. S. 335.

100 Arkansas, 94, reversed.

The facts, which involve the construction of a patent for swamp lands to a State and the extent of the lands conveyed thereby, are stated in the opinion.

*Mr. Henry D. Ashley*, with whom *Mr. William S. Gilbert* was on the brief, for plaintiffs in error:

The whole township theory, which is the only one which would put the title in the Levee Board, is against decisions of this court, rulings of the Land Department and the entire system for the survey and disposition of the public lands. 37 L. D. 345; 37 L. D. 462; *Cragin* v. *Powell*, 128 U. S. 691; *Little* v. *Williams*, 88 Arkansas, 37; *Gazzam* v. *Phillips*, 20 How. 372.

When in the extension of lines of public surveys a lake is meandered, its area is segregated from the public domain and beds of island non-navigable meandered lakes or lands uncovered by the recession of the waters of such

lakes from natural or artificial causes, since the survey and disposition of the adjacent shore lands, do not belong to the United States but to the riparian owners. *Hardin* v. *Jordan*, 140 U. S. 371; *Mitchell* v. *Smale*, 140 U. S. 406; *Kean* v. *Calumet Club*, 190 U. S. 466; *Whittaker* v. *McBride*, 197 U. S. 510; *Harrison* v. *Fite*, 148 Fed. Rep. 781; *Grand Rapids & I. R. Co.* v. *Butler*, 159 U. S. 87.

The common-law doctrine of riparian rights is fully recognized in Arkansas. *Harrison* v. *Fite*, 148 Fed. Rep. 781; *Warren* v. *Chambers*, 25 Arkansas, 120; *Rhodes* v. *Cissell*, 82 Arkansas, 367; *Little* v. *Williams*, 88 Arkansas, 37.

On the question whether the title is still in the United States or in plaintiff in error, so far as the Land Department has power to pass on this question it has rendered diametrically opposed decisions. *Hardin* v. *Jordan*, 140 U. S. 371.

While the courts have generally held the doctrine of estoppel as not applicable to the United States, where private rights have accrued and parties have changed their condition on the faith of the ruling of the Land Department, there should be some consistent continuity to such rulings. *Noble* v. *Union Logging Co.*, 147 U. S. p. 176; *United States* v. *Stone*, 2 Wall. 525, 535. See also application for survey, 23 L. D. 430; *Ex parte Michael Denody*, 11 L. D. 504; *United States* v. *Bank of Metropolis*, 15 Pet. 377.

It does not appear from the circumstances of this case that any action has been taken by the Government through any of its officers which should operate as an equitable estoppel.

Riparian rights are based upon the common law and are older than this Government, are part of *Lex Naturæ*, have no dependence on plats or surveys, and are important legal incidents to grants. Both by the common law and by the provisions of § 2476, Rev. Stat. (*Kean* v. *Calumet*

*Canal Co.,* 190 U. S. p. 480; *Scott* v. *Lattig,* 227 U. S. 229) in the absence of the survey system a description of this property would carry the bottom of non-navigable lakes.

Nothing but surveyed area can pass as swamp land because the entire vesting of title has its origin in the Swamp-Land Act of 1850, which, though in the earlier cases described as a grant *in præsenti,* calls for surveys and selections and patents.

The mistake in the surveys which prevented the doctrine of *Hardin* v. *Jordan* and cases following from being applied in cases of *Horne* v. *Smith,* 159 U. S. p. 40, and *Niles* v. *Cedar Point Club,* 175 U. S. p. 300, would equally apply to mistake in a metes and bounds description which was based on a private survey or on no survey at all, but called for ancient monuments, such as trees, and so forth, and failed in its courses and distances to go to the water covered area for which the description called.

Whether areas outside meander lines as marked on government plats passed as swamp lands under the act of 1850, and surveys, selections, and patents made in pursuance thereof is a pure question of the construction of the Federal statutes, but the question of whether non-navigable lakes and ponds have passed by riparian right as an incident to a conveyance of bordering lands meandered in any method on such lakes and ponds is a question of common law.

By leave of the court, *The Solicitor General,* on behalf of the United States as *amicus curiæ,* submitted:

The lands involved in this controversy, and other similar areas in the State of Arkansas, generally known as "sunk lands" and sometimes erroneously designated as "lakes," were omitted from the original public land surveys. In the year 1908 the Secretary of the Interior, after hearing persons interested, including the parties to this

litigation, decided that the "sunk lands" here involved and other areas of like character, not having been surveyed or specifically disposed of, remained the property of the United States, and accordingly ordered that they be surveyed and held for disposition under the general land laws. See "*Arkansas Sunk Lands*," 37 L. D. 345, *S. C.*, *ib*. 462. Homestead rights are being asserted to a large part, if not practically all, of these "sunk lands," and suits have been begun by the United States, and others are in immediate prospect, for the purpose of clearing its title against all adverse claims, including such as are asserted by the respective parties to the case at bar. Approximately 40,000 acres will be embraced in these suits.

The record in the present case being silent as to the existence of the Government's claim, this suggestion of it is made, not as bearing upon the merits of the controversy now presented, but as a matter of possible interest to the court in guarding its opinion.

*Mr. Samuel Adams*, with whom *Mr. H. F. Roleson*, *Mr. J. C. Hawthorne* and *Mr. N. F. Lamb* were on the brief, for defendant in error:

Complete title to the entire township passed to the State of Arkansas under the Swamp-Land Act (9 Stat. 520; Rev. Stat. § 2479), and see 11 Stat. 251.

The Swamp-Land Act did not require that the lands be surveyed but only identified as coming within the terms of the act. See *In re Florida*, 8 L. D. 65, 18 L. D. 26, 19 L. D. 251, 24 L. D. 147.

It may be noted also that some of the earlier surveys ordered by Congress in the Northwest Territory provided that only part of the townships should be subdivided. 1 Stat. 465; 38 L. D. 4.

Where the description of lands in a conveyance is clear the entire area within the description will pass and no exception exists unless that exception is clearly stated.

2 Devlin on Deeds, § 979; *Wendall* v. *Fisher*, 187 Massachusetts, 81.

The fact that there is an expressed exception of section 16 shows that no other was intended. *Mitchell* v. *Smale*, 140 U. S. 406, 413; *Kean* v. *Calumet Company*, 190 U. S. 452, 459.

The statement of area in the approved list and patent is immaterial. Warville on Abstracts, § 207; *Bishop* v. *Morgan*, 82 Illinois, 352; *Ufford* v. *Wilkins*, 33 Iowa, 110; *Fuller* v. *Carr*, 33 N. J. Law, 157; *Veve* v. *Sanchez*, 226 U. S. 234, 240.

In a conveyance of land by deed in which the land is certainly bounded it is very immaterial whether any or what quantity is expressed, for the description of the boundary is conclusive. *Powell* v. *Clark*, 5 Massachusetts, 355.

See also: 3 Washburn on Real Property (6th ed.), § 2322, p. 386; 2 Devlin on Deeds, § 1044; *Bowles* v. *Craig*, 8 Cranch, 371; *Spreckels* v. *Brown*, 212 U. S. 208; *Hyde* v. *Phillips* (Wash.), 112 Pac. Rep. 257; *Wright* v. *Wright*, 34 Alabama, 194; *Dalton* v. *Rust*, 22 Texas, 133; *Hall* v. *Mayhew*, 15 Maryland, 551; *Pierce* v. *Faunce*, 37 Maine, 63; *Reddick* v. *Leggat*, 7 N. Car. (3 Murph.) 539; *Hunter* v. *Morse*, 49 Texas, 219; *Jackson* v. *Barringer*, 15 Johns. 471; *Kruse* v. *Scripps*, 11 Illinois, 98; *Petts* v. *Gaw*, 15 Pa. St. 218; *Doe* v. *Porter*, 3 Arkansas, 60; *Towel* v. *Etter*, 69 Arkansas, 34.

As the areas shown on plats of surveys made before the Swamp-Land Acts were passed, were made primarily for the purpose of ascertaining the quantity of upland for which a purchaser from the Government should pay, they had no effect in restricting patents under the Swamp-Land Act. *Kean* v. *Calumet*, 190 U. S. 452; *McDade* v. *Bossier Levee Board*, 109 Louisiana, 626; *Tolleston Gun Club* v. *State*, 141 Indiana, 197; *Kean* v. *Roby*, 145 Indiana, 221. See also *Stoner* v. *Rice*, 121 Indiana, 51; *People* v.

*Warner,* 116 Michigan, 228; *Kean* v. *Roby,* 145 Indiana, 221.

Meander lines in government surveys and plats are principally intended not as boundary lines, but to assist in fixing the acreage of uplands for which a purchaser was expected to pay. *McDade* v. *Bossier Levee Board, Tolleston Gun Club* v. *State, Kean* v. *Roby,* and *Kean* v. *Calumet Company, supra.* See also *Hardin* v. *Jordan,* 140 U. S. 371, 380; *Niles* v. *Cedar Point Club,* 175 U. S. 300.

Only where the meander line is part of the boundary and acreage is sold, is the recitation of the amount regarded as material. *Security Land Co.* v. *Burns,* 193 U. S. 167; *French-Glenn Co.* v. *Springer,* 185 U. S. 47; *Niles* v. *Cedar Point Club,* 175 U. S. 300; *Horn* v. *Smith,* 159 U. S. 40; *Western Hawaiian Co.* v. *National Bank,* 35 Oregon, 298.

Plaintiffs in error have shown no title in themselves to the land in question.

The compromise agreement between the United States and the State of Arkansas made in 1898 does not affect the land in question. Act of April 29, 1898, 30 Stat. 367.

The Swamp Land Act was a grant *in præsenti* and passed equitable title to the State which the State conveyed to the levee district. The levee district is therefore entitled to assert its ownership as against all third persons. *Wright* v. *Roseberry,* 121 U. S. 488; *Tubbs* v. *Wilhoit,* 138 U. S. 134; *Iowa Land Co.* v. *Blumer,* 206 U. S. 482; *Michigan Land Co.* v. *Rust,* 168 U. S. 589, distinguished.

Similar grants have been held irrevocable even by express action of the state legislature. *Grogan* v. *San Francisco,* 18 California, 590; *Franklin School* v. *Bailey,* 62 Vermont, 467; *Mount Hope Cemetery* v. *Boston,* 158 Massachusetts, 509. See also *Jackson* v. *Dilworth,* 39 Mississippi, 772; *Higginson* v. *Slattery,* 212 Massachusetts, 583; *Webb* v. *New York,* 64 How. Pr. 10; Dillon on

Mun. Corp., 3d ed., p. 91; *Board of Education* v. *Blodgett*, 155 Illinois, 441, 450.

Property rights of municipal corporations cannot be taken away by legislative action without compensation. This rule especially applies where it is contemplated that the district should expend money and incur financial obligations on the faith of the grant made.

Concerning the suggestions filed by the Solicitor General on behalf of the United States as *amicus curiœ*, it is to be noted that the decisions in 37 L. D. 342 and 462 are contrary to two former opinions of the Department in August, 1894, and November 17, 1892, and are based principally on the decision of the Arkansas Supreme Court in *Little* v. *Williams*, 88 Arkansas, 37, now pending in this court on writ of error and expressly distinguished by the Arkansas Supreme Court in this case. Nowhere in the departmental opinions is there any finding that the lands were not swamp or overflowed. In fact, it is stated that they were such. 37 L. D. 348.

If homesteaders are going on these lands, it is of importance that the proper interpretation of the State's original title should be fixed in order that innocent persons may be guarded against a waste of their time and labor. *Irvine* v. *Marshall*, 20 How. Rep. 558, 567.

This court, in guarding the rights of owners of real estate under early patents from the Government, has repeatedly overruled the Land Department when it has misconstrued government surveys and patents and has acted on the assumption that a meander line was intended primarily as a boundary line. *Hardin* v. *Jordan*, 140 U. S. 371; *Mitchell* v. *Smale*, 140 U. S. 406, and *Kean* v. *Calumet Company*, 190 U. S. 452.

*Cragin* v. *Powell*, 128 U. S. 691; *Gazzam* v. *Phillips*, 20 How. 372; 37 L. D. 345 and 462, and *Little* v. *Williams*, 88 Arkansas, 37, cited by plaintiffs in error, are inapposite to this case.

Mr. Justice Van Devanter delivered the opinion of the court.

The chief controversy in this case is over the title to about 1,500 acres of unsurveyed lands in Poinsett County, Arkansas, which were part of the public domain at the date of the Swamp-Land Act of September 28, 1850, c. 84, 9 Stat. 519, and the Federal question to be considered is, whether under the operation and administration of that act these lands have passed from the United States or are still its property.

Although within the exterior lines of a township surveyed in 1840 and 1841, they, with other lands, were excluded from the survey, were meandered as if they were a lake, and were designated upon the official plat as a meandered body of water called "Sunk Lands," a name frequently applied in that region to areas which subsided during the New Madrid earthquake, a little more than a century ago, and subsequently became submerged. Other unsurveyed areas, designated as meandered bodies of water, were also shown upon the plat. The township was approximately six miles square and the plat bore an inscription to the effect that the total of the surveyed areas was 14,329.97 acres, so the unsurveyed areas represented as water must have amounted to 8,000 acres or more.

After the enactment of the Swamp-Land Act, the State requested that the township be listed as swamp lands and patented to it under that act, both of which were done, the former in 1853 and the latter in 1858. In requesting the listing, the State described the township as containing 14,329.97 acres, the total of the surveyed areas as inscribed upon the plat, and in making the list, the Secretary of the Interior took the same total and deducted 514.30 acres in fractional section 16, which already had passed to the State under the school-land grant,

thereby making the listed area 13,815.67 acres. The patent embraced lands in several townships, the portion of the description material here being: "Township 12 North of Range 7 East. The whole of the Township (except Section sixteen), containing thirteen thousand, eight hundred and fifteen acres and sixty-seven hundredths of an acre . . . according to the official plats of survey of said lands returned to the General Land Office by the Surveyor General."

In the state courts the levee district, the plaintiff, claimed title to the lands in controversy under the Swamp-Land Act and an act of the state legislature in 1893 (Laws Ark. 1893, p. 172) granting to the levee district "all the lands of this State" lying within the boundaries of the district; and the defendants opposed this claim upon two grounds: One, that if these lands had passed to the State the defendants had succeeded to the title by riparian right in virtue of their ownership, under conveyances from the State in 1871, of the fractional sections and subdivisions abutting on the meandered area called "Sunk Lands;" and the other, that the lands in controversy had not passed to the State, but were still the property of the United States. The trial court sustained the plaintiff's claim and entered a decree accordingly, which was affirmed by the Supreme Court of the State, the Chief Justice dissenting. 100 Arkansas, 94.

Both courts found as matter of fact from the evidence produced at the trial that at the time of the survey and at the date of the Swamp-Land Act the unsurveyed area designated upon the plat as "Sunk Lands" was not a lake or permanent body of water, but only temporarily overflowed, and was not distinctly lower or materially different from the adjoining lands; and with this as a premise it was held that the lands in controversy did not pass to the State or to the defendants with the adjoining lands as an incident of riparian ownership, but were con-

veyed to the State by the patent issued in 1858, and thence to the levee district by the state act of 1893.

If the patent conveyed these lands to the State we are not concerned with their subsequent disposal, for that is a question of local law. But did the patent include them? This, of course, is a Federal question. In answering it in the affirmative, the state courts regarded the words "Sunk Lands," shown upon the plat, as meaning that the unsurveyed area to which they were applied was land and not water, and also regarded the words "The whole of the Township (except Section sixteen)," as used in the patent, as embracing all that was within the exterior lines of the township, except Section 16, whether surveyed or unsurveyed and even although meandered and excluded from the survey. We are unable to accede to this view of either the plat or the patent.

Had the plat shown that all the lands were surveyed, it doubtless is true that the words "Sunk Lands" would not have indicated the presence of a body of water, but would have been taken in much the same way as would such words as "valley," "broken hills" or "level plateau." But the plat showed, as did also the field notes, that the area to which the words were applied was not included in the survey, but was excluded therefrom and meandered as a body of water, and also that the adjoining sections and subdivisions were surveyed as fractional, as is usual with lands abutting on a lake or similar body of water. Thus, what appeared upon the plat had the same meaning as if this area had been called "Sunk Lands Lake." And that the officers of the State and of the United States so understood is shown by the fact that in the proceedings preliminary to the issuance of the patent, as also in the patent, this and similar areas were excluded in specifying the amount of land in the township.

Of course, the words in the patent "The whole of the Township (except Section sixteen)" are comprehensive,

but they are only one element in the description and must be read in the light of the others. The explanatory words "according to the official plats of survey of said lands returned to the General Land Office by the Surveyor General" constitute another element, and a very important one, for it is a familiar rule that where lands are patented according to such a plat, the notes, lines, landmarks and other particulars appearing thereon become as much a part of the patent and are as much to be considered in determining what it is intended to include as if they were set forth in the patent. *Cragin* v. *Powell*, 128 U. S. 691, 696; *Jefferis* v. *East Omaha Land Co.*, 134 U. S. 178, 194. The specification of the acreage is still another element, and, while of less influence than either of the others, it is yet an aid in ascertaining what was intended, for a purpose to convey upwards of 22,000 acres is hardly consistent with a specification of 13,815.67 acres. *Ainsa* v. *United States*, 161 U. S. 208, 229; *Security Land Co.* v. *Burns*, 193 U. S. 167, 180; 3 Washburn on Real Property, 5th ed., 427. Giving to each of these elements its appropriate influence and bearing in mind that the terms of description are all such as are usually employed in designating surveyed lands, we are of opinion that the purpose was to patent the whole of the lands surveyed, except fractional section 16, and not the areas meandered and returned, as shown upon the plat, as bodies of water. That it is now found, as shown by the decisions below, that these areas ought not to have been so meandered and returned, but should have been surveyed and returned as land, does not detract from the effect which must be given to the plat in determining what was intended to pass under the patent. *Niles* v. *Cedar Point Club*, 175 U. S. 300, 306; *Hardin* v. *Shedd*, 190 U. S. 508, 520.

As, then, the lands in controversy were not included in the patent, and, under the findings below, did not pass to the State or to the defendants by riparian right with the

adjoining fractional sections and subdivisions, it follows that they remain the property of the United States. *Niles* v. *Cedar Point Club, supra; French-Glenn Live Stock Co.* v. *Springer,* 185 U. S. 47; *Security Land Co.* v. *Burns, supra.*

But it is said on behalf of the levee district that, even though the lands were not included in the patent, they passed to the State under the Swamp-Land Act independently of any patent, and passed thence to the district under the state act of 1893. The contention is not tenable. The lands were never listed as swamp lands and their listing does not appear to have been even requested, doubtless because they were not surveyed. Assuming that in fact they were swamp lands, the State's title under the Swamp-Land Act was at most inchoate and never was perfected. Not only so, but the State relinquished its inchoate title to the United States as part of a compromise and settlement negotiated in 1895, and the relinquishment is binding upon the levee district as a subordinate agency of the State. *Little* v. *Williams,* 231 U. S. 335. See *Carson* v. *St. Francis Levee District,* 59 Arkansas, 513, 533–535.

The levee district was therefore not entitled to prevail in respect of the unsurveyed lands.

*Decree reversed.*