## LEE WILSON & CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 4, 1915.)

### No. 4278.

1. PUBLIC LANDS  ⬀59—CONSTRUCTION OF PATENT—LANDS MEANDERED AS LAKE.

The United States patented to the state of Arkansas, under Swamp Land Act Sept. 28, 1850, c. 84 (9 Stat. 519), the whole of a described township of land, "except section 16, containing 14,565.03 acres according to the official plats of survey of the said lands returned to the General Land Office by the Surveyor General." According to such survey a certain part of the township was meandered and platted as a navigable lake, but was

not in fact a lake, nor submerged land, either at the time of survey or issuance of the patent. *Held*, that the land thus meandered and platted did not pass under the patent.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 184, 185; Dec. Dig. ☞59.]

2. WATERS AND WATER COURSES ☞111—LAKES—MEANDER LINES—DESCRIPTION OF LAND.

A purchaser from the state of fractional sections, described as such in the deed, and which according to the survey and plat were bounded by the meander line of a lake, took no title to any part of the land so meandered out.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 120; Dec. Dig. ☞111.]

3. PUBLIC LANDS ☞61—SWAMP LAND GRANT—ACT CONFIRMING TITLE OF GRANTEES OF STATE.

The state, having accepted the patent with the description as therein given, had no claim on the land meandered out as a lake, which would come within the provisions of Act April 29, 1898, 30 Stat. 367, confirming the title of grantees of the state to "any unconfirmed swamp land."

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 192–213; Dec. Dig. ☞61.]

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit in equity by the United States against Lee Wilson & Co. Decree for the United States, and defendant appeals. Affirmed.

For opinion below, see 214 Fed. 630.

Charles T. Coleman, of Little Rock, Ark. (William M. Lewis, of Little Rock, Ark., on the brief), for appellant.

W. N. Mills, Sp. Asst. Atty. Gen., of San Francisco, Cal. (W. H. Martin, U. S. Atty., of Hot Springs, Ark., and J. A. Tellier, Sp. Asst. Atty. Gen., of Little Rock, Ark., on the brief), for appellee.

Henry D. Ashley, of Kansas City, Mo., amicus curiæ.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

CARLAND, Circuit Judge. A correct decision of the issues involved in this case is of the greatest importance. We think the case is mainly ruled by Little v. Williams, 231 U. S. 335, 34 Sup. Ct. 68, 58 L. Ed. 256; Chapman & Dewey Lumber Co. v. St. Francis Levee District, 232 U. S. 186, 34 Sup. Ct. 297, 58 L. Ed. 564; Id., 234 U. S. 667, 34 Sup. Ct. 906, 58 L. Ed. 1526; Security Land & Exploration Co. v. Burns, 193 U. S. 167, 24 Sup. Ct. 425, 48 L. Ed. 662; French Glenn Live Stock Co. v. Springer, 185 U. S. 47, 22 Sup. Ct. 563, 46 L. Ed. 800; Niles v. Cedar Point Club, 175 U. S. 300, 20 Sup. Ct. 124, 44 L. Ed. 171.

The bill was filed to quiet title to one body of land containing 853.6 acres, composing parts of sections 22, 26, and 27, in township 12 north, range 9 east, in Mississippi county, Ark. Three individuals were joined with appellant as defendants below, but they disclaim. The lands became a part of the public domain in 1803 by acquisition

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

from the French republic, and of course remained such, unless the government had parted with its title. The appellant claims that it had done so, and that title thereto is now vested in it. It puts forth several reasons to sustain this claim; and those reasons are these:

[1] 1. That by virtue of the provisions of Act Sept. 28, 1850 (9 Stat. 519), and the procedure therein authorized, which was regularly taken, title to said lands passed to the state of Arkansas and thereafter that title became vested in appellant.

The facts relative to that claim are these: In 1839 and 1840 the township (township 12) was surveyed and established, and thereafter in 1841 the subdivisional lines were located and the township sectionized; that after the passage of the Swamp Land Act, supra, and in 1853, the state selected the entire township, as authorized by the act, and thereafter, and on the 27th day of September, 1858, all of said township was conveyed by patent to the state. The survey of 1841 meandered the lands in controversy as being a lake. The notes of the survey report the lake and also a bayou, as its outlet to the southwest, as navigable. The lands were platted in accordance with the survey showing the lake as meandered. It may be conceded that the selection as made by the Governor of the state was of the entire township, and that if the description in the patent had corresponded with the terms of the selection, the lands in controversy, which were represented as being then covered by the lake, would have passed under the patent. The description in the selection is in these words:

| Parts of Sections | Section | Township | Range | Surveyed Area Acres Hdths. | Unsurveyed Area Acres Hdths. | Total Area Acres Hdths. |
|---|---|---|---|---|---|---|
| Township | | 12 | 9 | (Except Section 16) | | 14,565.03 |

But when the patent was issued some five years later the description therein given is this:

"Township twelve (12) north, range nine (9) east. The whole of the township except section sixteen (16), containing fourteen thousand five hundred sixty-five acres and three-hundredths of an acre, according to the official plats of survey of the said lands returned to the General Land Office, by the Surveyor General."

And the patent with the lands thus described having been received and accepted by the state rendered the terms used in describing the lands in the selection irrelevant and immaterial in thereafter determining what lands passed by the patent; so the terms of the selection may be omitted from further consideration. Looking, then, to the patent, it follows that the lands which were meandered out and shown upon the plat as a lake did not pass under the patent unless the lake did in fact exist. Little v. Williams, 231 U. S. 335, 34 Sup. Ct. 68, 58 L. Ed. 256; Lumber Co. v. District, 232 U. S. 186, 34 Sup. Ct. 297, 58 L. Ed. 564.

The trial court held that a preponderance of the evidence went strongly to establish that the lands were not submerged lands and that there was not a lake as shown upon the plat at the time of the survey; that no depression can be noticed in the meandered area, and that there is no appreciable difference in the elevation between the lands on the two sides of the meander line. It further found that there is now a heavy growth of large, living trees on the lands; that there was testimony that many of the trees were over 70 and some over 200 years old, and that they could not have grown on submerged lands; and said that it "is convinced beyond a reasonable doubt that there was no permanent body of water on the land meandered at the time the original survey was made, nor for a long period before that time, nor at the time of the passage of the act of 1850, or at the time the state made its selection."

The trial court also called attention to the fact that the Secretary of the Interior in 1908, after a hearing of a controversy between parties who desired to acquire the lands in controversy as homesteads, and others who claimed as riparian owners, made a like finding to the effect that the lands were not covered by a permanent body of water at the time of the original survey or at the time of the enactment of the Swamp Land Act, or when the state made its selection. It therefore seems to be conclusively established that the lands did not pass under the patent of September 27, 1858.

[2] 2. The appellant further contends that the state acquired title to the lands under Act April 29, 1898 (30 Stat. 367), approving a compromise which had theretofore been authorized and made between the United States and Arkansas of a long-existing controversy concerning swamp and overflowed lands and the title thereto. That act provided:

"That the title of all persons who have purchased from the state of Arkansas any unconfirmed swamp land and hold deeds for the same be, and the same is hereby, confirmed and made valid as against any claim or right of the United States."

Between the time that the state made its selection of township 12, as is claimed, and the time that it received the patent dated in September, 1858, one William B. Waldron made application to the commissioners of state lands to purchase "Frl. Sec. 22, T. 12 N., R. 9 E., 164.12 acres, Frl. Section 26, T. 12 N., R. 9 E., 623.83 acres," and "Frl. Section 27, T. 12 N., R. 9 E., 291.98 acres," and he was permitted to enter the same as swamp and overflowed lands. Thereafter and in 1859 the state issued its patent conveying to Waldron all of said lands for which he applied and described therein in the same way as fractional sections. The patents to Waldron, therefore, did not purport to convey any of the lands which had been meandered out as the lake, and, as there was no lake, the meandered area could not pass as riparian to the fractional sections. It therefore cannot be said that the transaction between Waldron and the state in his purchase of the lands came within the contemplation of the act of 1898. He applied only for the fractional sections, and the fractional sections were conveyed to him. The meander line,

therefore, constituted one of his boundary lines, beyond which he could not go. 185 U. S. 47, 22 Sup. Ct. 563, 46 L. Ed. 800; 232 U. S. 186, 34 Sup. Ct. 297, 58 L. Ed. 564.

[3] Waldron and his grantees lost title which they obtained through Waldron's patent from the state to the fractional sections by decrees and sales for overdue and unpaid taxes, and the state became the purchaser at those sales and was thereby reinvested with the title which it had patented to Waldron. These conveyances back to the state occurred as to the different tracts between 1883 and 1888, and thereafter in March, 1893, the state conveyed to the St. Francis levee district, and thereafter in 1894 the levee district obtained a decree of the chancery court confirming in it title to all of sections 22, 26, and 27, which, of course, includes the lands in controversy. Thereafter the levee district attempted to pass title thus confirmed in it to all of said sections to its several grantees, and by mesne conveyances such purported title passed to appellant. From 1900 to 1910 special levies were made by the district upon all of the lands in all three sections for drainage purposes, and they had been paid for each of those years by their purported owners, including the appellant. The same is true, we think, as to general taxes for state and county purposes. On these facts appellant again invokes Act May 2, 1898, and also an estoppel against the appellee; but we see nothing in the title thus acquired by the state under the tax sales which would make the compromise act applicable to that situation. The only selection of swamp lands made in township 12 by the state is the one above referred to and made in 1853, but the state did not stand on the terms of that selection as made. It accepted the patent of September 27, 1858, with the lands otherwise described, which we think must be taken as a modification of the terms of its selection and as adopting for that purpose the description in the patent itself. It therefore cannot be said that at the time of the passage of Act May 2, 1898, the state had pending any unconfirmed selection of swamp and overflowed lands in township 12, so far as anything appears from the record.

3. As above noted, appellant relies also on the claim of estoppel and that it is a bona fide purchaser. The facts in both of those respects are sufficiently stated and discussed in the opinion of Judge Trieber (214 Fed. 630) and in which opinion in relation thereto we concur.

Affirmed.