MINNIE *v.* ROSE.

Opinion delivered March 20, 1922.

1. PUBLIC LANDS—CONCLUSIVENESS OF SURVEYS.—Official surveys made by the United States are not open to collateral attack in an action at law between private parties.

2. BOUNDARIES—MEANDERED LINES.—Where, in a survey of the public domain, a body of water or lake is found to exist and is meandered, the result of such meander is to exclude the area from the survey; and where there exists a difference between the meandered line and the existing line of the watercourse, the latter and not the former is to be considered the true boundary.

3. COURTS—FEDERAL QUESTIONS.—In questions involving the public survey, the decisions of the Supreme Court of the United States are binding upon all other courts.

Appeal from Cross Circuit Court, *R. H. Dudley*, Judge; reversed.

*G. S. Dearing, Killough, Lines & Killough*, for appellant.

Lands beyond the meander line along navigable streams are included with the adjoining lands when conveyed. Tiffany, Real Prop. vol. 2 p. 1649; 4 R. C. L., p. 97; 5 Cyc. p. 899; 19 L. Ed. 78; 42 L. R. A. 502, note; 65 N. W. 344.

There are three reasons for a meander. First, to define the sinuosities of the stream; second, to approximate the acreage of the land; third, to reserve for riparian and public uses the shore line of the body of water. 62 L. Ed. 128; 140 U. S. 371; 35 L. Ed. 428; 190 U. S. 452; 47 L. Ed. 1134; 190 U. S. 508, 47 L. Ed. 1156.

It is presumed that the meander line coincides with the water so as not to leave a strip between the boundary and the water. 23 L. Ed. 62 note; 42 L. R. A. 502.

Patents are construed according to the local law of the State. 190 U. S. 519; 140 U. S. 371; 152 U. S. 1; 159 U. S. 89; 201 U. S. 332; 140 U. S. 406.

By the common law, which obtains in this State, a grant of land abutting on a navigable stream carries title to the high-water mark. 119 Ark. 377; 190 U. S. 459; 53 Ark. 314.

If the surveys were fraudulent, they could only be impeached by the Government. 128 U. S. 691; 158 U. S. 258; 197 U. S. 510; 23 Tex. 234; 12 Johns 82, 7 Am. Dec. 280; 96 Ia. 414; 42 N. W. 299; 54 Minn. 290; 2 Farnham, Waters, § 422.

*John W. Brawner* and *J. F. Gautney,* for appellee.

Where the grant of land bordering upon a stream is a narrow strip lying between the meander line as surveyed and the natural stream, but much smaller in proportion than the land granted, the grant will be construed as covering the land between the meander line and the bank of the stream, but where the land between the meander line and the bank is so grossly in excess of that sold that it is apparent that there is a fraud and mistake in the survey, the meander line will not be the border. Farnham on Waters and Water Rights, vol. 2, pp. 1464-5, § 418.

From the character of the timber, the lay of the land, and other things it is apparent that this 28 acres was never surveyed, and this amount of land as compared to the amount granted, 43.10, is so excessive that it can not

be said that the grantee from the State took to the bank of the river, under his patent, this land being in existence at the time of the survey.

While appellee claims no title to the land, neither can appellant, and appellant has no right to recover upon the strength of his patent. 40 L. Ed. (U. S.) 68; 44 L. Ed. (U. S.) 171; 48 L. Ed. (U. S.) 662.

Where the surveyor omits to include large tracts of land between the meander line and the stream, the grant will extend only to the meander line and not the stream.

SMITH, J. Appellants instituted a suit in ejectment against appellee to recover a certain twenty-eight acre tract of land, which is described as a part of the left bank of the St. Francis River, a navigable stream, section 5, township 7 north, range 5 east, Cross County, Arkansas, a part of which is alleged to be accretion and the remainder land which lies between the meander line and the shore line of the left bank of the St. Francis River. The land lies around a long bend of the river, it being about two miles around the bend and only about one-half mile across. Title was deraigned as follows:

Patent from the United States to the State of Arkansas, conveying the whole fractional section 5 on both sides of the St. Francis River in township 7 north, range 5 east.

Patent by State of Arkansas to the heirs and legal representatives of Thomas J. Hill, issued upon a certificate of entry to Thomas J. Hill, conveying "fractional south half of section 5, on left bank of river, in township 7 north, range 5 east," containing 43.10 acres.

These patents are followed by mesne conveyances to the various intermediate vendors of the appellants.

There was a verdict and judgment for the defendant, from which is this appeal.

The evidence tended to show and, in view of the instructions of the court, we assume the jury found that the twenty-eight acres sued for were in addition to the 43.10 acres described in the patent, that is, that there

was a tract of land lying between the meander lines of the south half of section 5 and the banks of the St. Francis River which, with the accretions thereto, amounted to 28 acres.

Appellee presented no claim of title, but alleged, and proved, possession in himself, but for a time insufficient to have given him title by adverse possession, and claimed that the land belonged to the United States, and not to the appellants, whose suit must therefore necessarily fail, as appellants could recover only on the strength of their own title.

The instructions submitted the case to the jury upon the theory that, if there was any land at the time of the Government survey beyond the meander line, neither that land, nor the accretion thereto, would belong to appellants, but belonged to the United States; whereas appellants requested instructions to the effect that, if the jury found that it was intended, in the various conveyances offered in evidence, including the patents, the bank of the river, and not the meander line, should be the boundary of the tract, and that the title to the other part of the lands was in the plaintiffs, the jury should find for the plaintiffs for the lands located between the meander line and the river bank. Which theory is correct?

The question stated is an interesting one, and has several times been passed upon by the Supreme Court of the United States, as well as by the courts of last resort of a number of the States. One of the earliest cases, and one usually cited, is that of *St. Paul & P. R. Co.* v. *Schurmeir*, 7 Wall. 272. Other decisions of the United States Supreme Court frequently cited are: *Hardin* v. *Jordan*, 140 U. S. 384; *Cragin* v. *Powell*, 128 U. S. 691; *Jefferis* v. *East Omaha Land Co.*, 134 U. S. 194; *Security Land & Exploration Co.* v. *Burns*, 193 U. S. 167; *Kean* v. *Calumet Canal*, 190 U. S. 452; *Hardin* v. *Shedd*, 190 U. S. 508. The annotated cases of *Hanlon* v. *Hobson*, 42 L. R. A. 502, and *Stoner* v. *Rice*, 6 L. R. A. 387, collect many

cases on the subject. See also numerous cases cited in 9 C. J. 189 and in the note to the section on Meandered Lines as Boundaries (§ 29) of the article on Boundaries in 4 R. C. L. 97.

This court, in the case of *Little* v. *Williams,* 88 Ark. 37, held that the official surveys made by the United States Government are not open to collateral attack in an action at law between private parties. This case was affirmed on appeal to the Supreme Court of the United States. 231 U. S. 335.

It follows therefore that the survey of the land in question is *prima facie* correct; and, this being true, what rights have been acquired under the patents from the United States and the State of Arkansas?

This being a question involving the public survey the decisions of the Supreme Court of the United States are, of course, binding on all other courts, and the last decision of that court to which our attention has been called is the case of *Lee Wilson Co.* v. *United States,* 245 U. S. 24. The statement of points and authorities of counsel found in the headnotes of this case, as reported in 62 L. Ed. U. S. Rep. 128, collect a very great many cases on the subject. In an opinion by Chief Justice WHITE it was said:

"It thus becomes apparent that the subject of the controversy relates solely to the unsurveyed area resulting from the erroneous assumption as to the existence of a lake, and embraces only 853.60 acres. It also is certain that, as the result of the concurrent findings of fact by the two courts and the admission made by the parties, there is no controversy as to the facts concerning the error committed as to the supposed lake, leaving therefore to be decided only the legal questions which arise from the admitted facts. As a means of putting out of view questions which are not debatable we at once state two legal propositions which are indisputable because conclusively settled by previous decisions.

"First, where, in a survey of the public domain, a body of water or lake is found to exist and is meandered,

the result of such meander is to exclude the area from the survey and to cause it, as thus separated, to become subject to the riparian rights of the respective owners abutting on the meander line in accordance with the laws of the several States. *Hardin* v. *Jordan,* 140 U. S. 371, 35 L. Ed. 428, 11 Sup. Ct. Rep. 808, 838; *Kean* v. *Calumet Canal & Improv. Co.,* 190 U. S. 452, 459, 47 L. Ed. 1134, 1137, 23 Sup. Ct. Rep. 651; *Hardin* v. *Shedd,* 190 U. S. 508, 519, 47 L. Ed. 1156, 1157, 23 Sup. Ct. Rep. 685.

"Second. But where, upon the assumption of the existence of a body of water or lake, a meander line is, through fraud or error, mistakenly run because there is no such body of water, riparian rights do not attach, because, in the nature of things, the condition upon which they depend does not exist; and upon the discovery of the mistake it is within the power of the land department of the United States to deal with the area which was excluded from the survey, to cause it to be surveyed, and to lawfully dispose of it. *Niles* v. *Cedar Point Club,* 175 U. S. 300, 44 L. Ed. 171, 20 Sup. Ct. Rep. 124; *French-Glenn Live Stock Co.* v. *Springer,* 185 U. S. 47, 46 L. Ed. 800, 22 Sup. Ct. Rep. 563; *Security Land & Exploration Co.* v. *Burns,* 193 U. S. 167, 48 L. Ed. 662, 24 Sup. Ct. Rep. 425; *Chapman & Dewey Lumber Co.* v. *St. Francis Levee Dist.,* 232 U. S. 186, 58 L. Ed. 564, 34 Sup. Ct. Rep. 297."

We have here no question about the existence of the river and its proximity to the land in question, and the land department of the United States has not—at least so far as this record shows—called into question the survey of this land.

In Warvelle on Abstracts, 4th Ed., § 165, it is said: "Meander lines are run, in surveying fractional portions of the public lands bordering on navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the bank of the stream, and as the means of ascertaining the quantity of land in the fraction subject to sale, and which is to be paid for by

the purchaser. Fractional divisions, made so by the interference of water, are designated and sold by the numbers attached to the lots, and reference is always had to the notes of survey. The water indicated in these notes is always the boundary; and where there exists a difference between the meandered line as run and the existing line of the water-course, the latter and not the former is to be considered the true boundary."

There is a note to the case of *Security Land & Exploration Co.* v. *Burns, supra,* as the same is found reported in 48 L. Ed. U. S. Rep. page 662, to the following effect: "If the Federal Government, in meandering its land, meanders a stream or other body of water, and grants the land according to the survey, the water, and not the meander line, will, in general, be the boundary." A number of cases are cited in the note which support it.

We conclude therefore that the court erred in the theory upon which the case was submitted to the jury, and, under the undisputed testimony in the case, appellants are entitled to have the cause reversed and remanded, with directions to enter a judgment in their favor for the possession of the land sued for, and the question of rents may be submitted to a jury, if appellant so elects.

Judgment reversed and cause remanded.