[Civ. No. 499.   Third Appellate District.—December 21, 1908.]

# S. C. LILLIS, Respondent, v. ANTONIO URRUTIA et al., Appellants.

BOUNDARY LINE BETWEEN GOVERNMENT SECTIONS—RULES FOR DETERMINING DISPUTE.—In determining a dispute as to a boundary line between government sections, the field-notes of the actual survey must prevail over a plat or map departing therefrom; and though the general rule is that known monuments clearly established by the survey must prevail over courses and distances, yet the courses and distances must control, when there is evidence showing a clear mistake as to monuments, or when monuments are of no avail, because they cannot be identified or accurately located. In the latter case, the clearly mistaken or uncertain monuments must give way "to the definite and ascertained particulars" referred to in section 2077 of the Code of Civil Procedure.

ID.—SURVEY IN FIELD SHOWING STRAIGHT LINE FOR DISPUTED BOUNDARY.—When the field-notes of the government survey show that the disputed boundary is "on a true line between sections 22 and 27," giving its exact course between ascertained corners, previously located, the true line described is undoubtedly a straight line, and is determinative of the dispute, where no monument is called for therein, and such line cannot be controlled by the plat, nor by the location of a random trial line in the survey.

ID.—RANDOM TRIAL LINE TO LOCATE CORNER, AND REFERRING TO MONUMENTS NOT CONTROLLING.—A mere random trial line run for the purpose of locating a corner, and referring to monuments, cannot control the straight line called for in the field-notes from corner to corner, and referring to no other monuments than the ascertained corners.

ID.—UNCERTAIN REFERENCE TO MINER'S CABIN LONG DISAPPEARED.—A reference in the random line to a miner's cabin 20-40 links south is too indefinite and uncertain to be made the basis of a finding; and when such miner's cabin has long since disappeared, and its location cannot be determined with certainty, it cannot be controlling of the straight line called for in the field-notes.

APPEAL from an order of the Superior Court of Fresno County, denying the motion of defendants for a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, and F. E. Cook, for Appellants.

H. H. Welsh, and Sutherland & Barbour, for Respondent.

BURNETT, J.—The action is to quiet title to the north half of the north half of the northwest quarter of section twenty-seven (27), in township eighteen (18) south, range thirteen (13) east, M. D. B. & M. The defendant, Antonio Urrutia, was in the possession of and working a certain quicksilver mine known as the Mexican Mine, and claimed by him to be in section twenty-two (22), in said township and range, immediately north of said section twenty-seven (27).

It is admitted that plaintiff is the owner of the whole of said section twenty-seven (27), and the only vital point in dispute is as to the location of the boundary line between these two sections, the plaintiff claiming that the portion of the mine upon which Urrutia was working is south of said line and in said section twenty-seven (27), and Urrutia claims, as we have seen, that it is north of said line, and therefore in section twenty-two (22).

The solution of the controversy depends upon the determination of the question whether said boundary is a straight line or departs from a straight course between the section corners by reason of certain monuments called for in the surveyor's notes. If the said line be straight, it is conceded that plaintiff must prevail, but it is insisted by appellant "that where, as in this case, the government survey calls for monuments, whatever their character may be, so long as they are substantial objects, that this court is not at liberty to reject these more stable and certain evidences of the true

boundary, and because of the difficulty, sometimes and generally existing, of determining the boundary in accordance with such monuments to have recourse to the easy, but incorrect, presumption that notwithstanding the call for the location of and the indication of such monuments upon the plat that the line was straight from one known corner to another.''

The particular monuments upon which appellant relies in this connection are a miner's cabin and a certain blazed tree, and importance also is attached to the circumstance that upon the plat the ''Mexican Mine'' appears delineated in section 22. On the other hand, it is the contention of plaintiff that the evidence as to the cabin and blazed tree is too uncertain to be a safe guide, and that the representation upon the plat must give way to the field-notes, which latter reveal clearly that a straight line was run between the corners.

The law seems to be well settled that monuments, when established, must prevail over courses and distances when there is any conflict, as the former are more stable and certain, and are less liable to be mistaken.

In *Spreckels* v. *Ord,* 72 Cal. 88, [13 Pac. 159], it is said: ''It was for the jury, or court sitting as a jury, to find as fact where was the head of the arroyo, and where was the blazed tree; and inasmuch as the tree actually blazed by the parties to the deed, or adopted by them as the point of commencement, was a more certain object than the head of the 'arroyo'—a place somewhat indefinite and perhaps shifting— it was the duty of the court to determine, as matter of law, that such tree (if clearly identified) was the controlling monument.''

In *Hubbard* v. *Dusy,* 80 Cal. 283, [22 Pac. 215], the following instruction was upheld: ''Monuments left by the United States survey on the ground are the best evidence as to where the land should be, and any monument so established can only be antagonized by evidence of other monuments. As between different monuments, the jury should look to the evidence identifying them and those monuments best identified should prevail, independent of anything even in the field-notes of the original or any subsequent survey.''

The Code of Civil Procedure, section 2077, provides that ''the following are the rules for construing the descriptive part of a conveyance of real property, when the construction

is doubtful and there are no other sufficient circumstances to determine it: 1. Where there are certain definite and ascertained particulars in the description, the addition of others which are indefinite, unknown, or false, does not frustrate the conveyance, but it is to be construed by the first mentioned particulars. 2. When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount.''

These rules, obviously, are conventional aids for the determination of the intention of the parties to conveyances and to assist in locating the ground as actually surveyed. If otherwise that intention is made clear or the survey is conclusively delineated, even monuments called for may be disregarded, for the reason, as the code has it, that the construction is not doubtful and there are ''other sufficient circumstances to determine it.''

In *Harrington* v. *Boehmer,* 134 Cal. 199, [66 Pac. 215, 489], it is said: ''Of course, where there is a discrepancy between field-notes and a plat, the latter being made from the former, and the former being the better evidence as to where the line was run in the field, the plat must give way to the field-notes. The question in all cases similar to this is, where were the lines run in the field by the government surveyor? A government township lies just where the government surveyor lines it out on the face of the earth. These lines are to be determined by the monuments in the field.''

In *County of Yolo* v. *Nolan,* 144 Cal. 448, [77 Pac. 1007], the supreme court declares: ''The field-notes should be taken, and from the courses and distances, natural monuments or objects, and living trees described therein, the surveyor should endeavor to fix the line precisely as it is called for by the field-notes. He should endeavor to retrace the steps of the man who made the original survey. If by so doing the line can be located, it must be done, and, when so located, it must control. He is not authorized to correct what the government has done. The line as surveyed and described in the field-notes is the description by which the government sells the land.''

The field-notes here, as far as necessary to quote, are as follows: ''East on a random line between sections 22 and 27, variation 16° east. Descend 14.40 on side of the Fresno

Quicksilver Mine, commonly called the Mexican Mine.  Miner's cabin 20-40 links south.  36.20 cross deep cañon, course N.E.  40.00 set temporary ¼ section corner.  40.50 cross ravine course north and ascend.  51.10 top of ridge bears north and descend.  62.00 cross ravine course north.  78.20 cross trail to corn field.  80.10 intersect north and south line 25 links south of corner to sections 22, 23, 26 and 27 from which corner I run S. 89° 48′ W. *on a true line* bet. secs. 22 and 27, Va. 16° E. 40.50 set post 4 in. dia. 1 ft. in earth 1 ft. above stone mound 4 ft. in dia. at base by 2 ft. in height for ¼ sec. cor., 80.10 the cor. to sec. 21, 22, 27 and 28.''  The field-notes show that the government surveyor had already located the two corners mentioned—the northwest corner of section 27 by running north between sections 27 and 28 and the northeast corner of said section 27 by running north between sections 26 and 27.  He then runs a random line east from said northwest corner, as we have already shown, calling for the miner's cabin, and strikes the north and south line 25 links south of the northeast corner of said section 27, and then he definitely locates the boundary between said sections 22 and 27 by running a true line S. 89° 48′ W. from said northeast corner to the northwest corner of said section 27.  A ''true line'' is undoubtedly a straight line, and there is nothing in the field-notes to show that the line as located between said northeast corner and the said northwest corner of section 27, which is the dividing line in controversy is anything else than a straight line.  There is no monument whatever called for and we would not be tracing the line as described and located by the surveyor if we should inject into the problem the miner's cabin or the blazed tree.  The latter is not mentioned at all, and the former is referred to only in running the random or trial line, and can have no controlling influence in the determination of the question what the surveyor meant when he said he ran a true line S. 89° 48′ W. from one corner to the other.  The random line, it is true, deviates but slightly from the true line, and its eastern terminus was found to be only 25 links south of the northwest corner of said section 27, but it must be apparent from the field-notes that it was intended as an experimental effort to verify the location of said corner or of the eastern boundary of said section 27, and was preliminary to the establish-

ment of the straight line between the corners as the boundary. between said sections 22 and 27.

Reference is made by the appellants' learned counsel to the plat as a ''daguerreotype'' of the situation, and it is argued that since by this picture the mine is shown to be in section 22, it must have been so determined by the survey. But the plat also shows the boundary to be a straight line, and it would be difficult to determine which of these circumstances is entitled to the greater weight. But this is not a case where reference is made in a deed or patent to a map which is thereby made a part of the conveyance. The plat is made from the field-notes, and if there be any inconsistency the notes must prevail.

But if we view the miner's cabin, the so-called monument, as entitled to consideration in the location of the boundary line, contemplating the evidence in the light most favorable to the trial court's determination, we reach the conclusion that the reference in the field-notes to ''miner's cabin 20-40 links south'' is too indefinite and uncertain to be made the basis for a finding. We deem it unnecessary to set out the evidence in this regard, but it is practically agreed by the surveyors that the call ''20-40 links south'' is meaningless; and while it appears that at the time of the survey there was a miner's cabin not far away, it has long since disappeared, and its location and identification are a matter of grave doubt and conjecture. In the determination of a boundary line a monument, of course, can be of no avail unless identified, and if destroyed its position must be accurately located. If not identified or located definitely, it must give way to the ''certain definite and ascertained particulars,'' as provided in said section 2077 of the Code of Civil Procedure.

The rule is undoubtedly correct, as stated in *Christenson* v. *Simmons*, 47 Or. 184, [82 Pac. 807] : ''It is a rule of law that where there is a conflict or disagreement in the courses and distances on the one hand and lines and monuments on the other, the latter will control. In other words, calls in the survey for any objects or marked lines and corners prevail over calls for courses and distances. This must be taken with a grain of qualification—that calls of the former character must be clearly and definitely established, and when so established, the rule applies. If, however, the evidence is of

a character to lead to the conclusion that the mistake is in the calls for natural or artificial objects and not in those for courses and distances, the rule is the reverse.''

Two surveyors testified as experts. Mr. Scott McKay, the county surveyor of Fresno county, located the boundary as a straight line between the corners. Mr. George L. Hoxie agreed with the county surveyor as to the location of said corners but attaches more importance to the call for a miner's cabin and endeavors to follow this random line as the true boundary line, although he does say: ''I don't say that is the line they call for on their field-notes. The line that I had established there is not the line called for in these field-notes. The line that I have established is simply a line that I have placed on account of the location of the cabin and other evidences, that is on account of the call for the descent in the line to that point and on account of the blazed tree.''

However, the witness gives certain reasons for believing that the boundary is not a straight line, but substantially as he located it, which would throw the mine in section 22.

We think, though, the court was justified in agreeing with the county surveyor that the boundary as established by the United States survey is a straight line, and as that is decisive of the controversy, the order denying the motion for a new trial is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 18, 1909.