JOHN ASPINWALL and FRANK E. HEATH, *Plaintiffs in Error*, v. W. H. H. GLEASON and MARY H. GLEASON, *Defendants in Error*.

Division B.

Opinion filed May 20, 1929.

*David R. Dunham, M. B. Smith* and *Axtell & Rinehart,* for Plaintiff in Error;

*Hull, Landis & Whitehair,* for Defendants in Error.

BUFORD, J.—This was a suit in ejectment.

There was an instructed verdict for the defendants.

Final judgment was entered on the verdict.

The record is rather voluminous, but the real question involved is easily segregated from the remainder of the record.

The rights of the parties turn on the correct location of the north line of Section 14, Township 27 S., Range 37 E. There was introduced in evidence a government plat of that part of the section involved in this litigation and also the field notes of the government survey of that part of the section. The record shows that three surveyors, to-wit: Paxton, Inskeep and Canova, each surveyed the north line of this section and located the same conforming to the calls of the field notes, except in this: There is a statement in the field notes as follows, "This line crosses river about 12 chs. south of Merritt's Island," and these surveys testified in effect that a line run conforming to the field notes in other respects would not pass south of Merritt's Island, but would cross the lower end of Merritt's Island. Mr. Inskeep

further testified that he had surveyed the township line on the south and through the range lines to the township line on the north and that he located the section line, that is the north line of Section 14, according to the field notes. He also testified that a line run which would, being extended, fall 12 chains south of Merritts Island would not otherwise meet the calls in the field notes. This witness also testified as follows:

I started from the northwest corner of the township identified by the original notes and continued east. The northwest corner of the township is located west of the Banana River and west of the Indian River. From the northwest corner of the township, as identified from the Government Field Notes, I ran east to the west shore of the Indian River, in accordance with the directions and distances of the field notes. Proceeding from the west bank of the Indian River, I triangulated the distance across the Indian River, went east across Merritts Island, on the east side of Merritts Island and on the west side of Banana River I found a cross on a coquina rock which was set by Henry Merrell, which has been used as the north line of the township for thirty years, anyway.

(On motion, the statement of witness that cross on coquina rock was found was stricken.)

That point was in the same line as shown by the field notes of the survey. I then triangulated the Banana River and continued east to the west shore of the Atlantic Ocean. Proceeding in the lines and distances given by the field notes, I traversed the west shore of the Atlantic Ocean south to the south line of the township, as shown on the recorded plat of India-Atlantic. I followed the lines as laid down by the field notes from

the Banana River to the Atlantic Ocean, the same direction given by the field notes. The distances did not vary much from the field notes; don't know what the variation is. I checked the correctness of the south line of the township as marked on the ground and shown on the recorded plat of India-Atlantic, checked the distance between the north and south line of the township. The distance, I mean between the north and south line of the township, is not exactly the distance shown by the field notes. The distance as shown by the field notes between the north and south line of the township is 31688 feet, and the distance I measured is 31852 feet, a distance of six miles. That's a variation of twenty-seven feet to the mile. The map which I hold in my hand represents the survey which I made of the north line of the township and the measurement to the south line.

There was other evidence which corroborated the testimony of the surveyors named. The Government plate above referred to did not purport to be a plat of Merritts Island. It purported to be a plat of that part of the above named township lying between Indian River and the Atlantic Ocean and did not purport to definitely locate Merritts Island. The plaintiff later offered in evidence a Government plat of Merritts Island. This plat was made in 1877, which was after the date of the patent to the lands involved in this suit. That plat shows that according to the Government survey of Merritts Island the south part of the island lies in Section 14 and that it does not end in Section 11 and north of the north boundary line of Section 14, as is suggested in the field notes of that part of Section 14 involved in this suit.

It appears to us that there was abundance of evidence to show that the statement contained in the field notes

above quoted, ''This line crosses river about 12 chains south of Merritts Island,'' is an error and that the showing of Merrittts Island on that plat by a sketch drawn in accordance with that statement in the field notes is also an error. This conclusion is borne out to a practical certainty by the later government survey of Merritts Island and the plat of Merritts Island drawn in accordance with that survey which shows that the north line of section 14 does not lie south of the island, but crosses the island some distance above the southern point thereof.

It appears to us that the proposition of law contended for by the appellants, ''that the description of lands and plat of original survey filed in the General Land Office as made by the Surveyor General from the field notes are conclusive and the section lines and corners as laid down in the description and plat are binding upon the general government and upon all persons concerned,'' as stated in Kirsh et al. v. Persinger, 87 Fla. 364, 110 So. R. 166, is not questioned nor disputed in this case and that the trouble is that the location of the northern boundary line of Section 14 as affecting the lands involved in this suit has become confused with the location of the southern end of Merritts Island. It must be borne in mind that the field notes and survey and plat involving the lands, the title to which is here in question, did not include any part of a survey of Merritts Island and that Merritts Island was not correctly located on that plat could not serve to change the true location of the lines of the lands which were included within the survey, the field notes and the plat.

The law is too well settled to require any explanation, argument or in fact further enunciation by this Court that whenever a call in field notes is irreconcilable and incongruous with other calls of field notes or a grant by which a survey may be located and which call appears to

have been inserted by mistake, it may be wholly rejected and disregarded. Ulman v. Clark, 100 Fed. R. 181 to 184; White v. Luning, 93 U. S. 514, 23 Law Ed. 938; Shipp v. Miller, 2 Wheat 316, 4 Law Ed. 248, 4 R. C. L. 110, Sec. 47. And further, that where there is a variance between the plat and the field notes of the original survey of public lands the former must control. Herrington v. Boehmer, 66 Pac. R. 214, Bradshaw v. Edelen, 92 S. W. R. 291, 9 C. J. 210.

It is also the well settled law that the location of the survey upon the ground is a fact to be ascertained by the jury, and, therefore, the location of the north line of Section 14 was a question of fact to be determined by the jury in this case and there was before the court and jury substantial evidence to show that the north line of Section 14 extended would not run south of Merritts Island, but, in fact, would cross Merritts Island. We are not prepared to say that this evidence was conclusive on that point, but we must say that it was substantial evidence tending to prove that fact and that a later government plat of Merritts Island showing the north line of Section 14 crossing the island was competent evidence tending to show that the call in the former survey, not including a survey of Merritts Island, which stated that this line would run about 12 chains south of Merritts Island was a mistake.

If authority were needed to uphold this position, it could be found in the case of Barclay v. Powell, 6 Pet. 498, 8 Law Ed. 477; Maria Josefa Cavazos v. Manuel Trevino and Eben Cobb, 6 Wall 773, 18 Law Ed. 813; French-Glenn Livestock Co. v. Springer, 185 U. S. 47, 46 Law Ed. 800; Dowl v. Weineman, 93 N. W. R. 279, 9 C. J. 289, 4 R. C. L. 76.

In Gravett v. Turner et al., 77 Fla. 311, 81 So. R. 476, this Court say:

A party moving for a directed verdict, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.

When the facts are not in dispute, and the evidence, with all the inferences that a jury may lawfully deduce from it, does not, as a matter of law, have a tendency to establish the cause of action alleged, the judge may direct a verdict for the defendant. But the court should never direct a verdict for one party unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.

In Branford State Bank v. Howell Co., 88 Fla. 493, 102 So. R. 649, this Court say:

The judge should never direct a verdict for one party unless the evidence is such that no view which the jury may lawfully take of it favorable to the other party can be sustained, nor should a motion for directed verdict be granted where the evidence is conflicting or will admit of different reasonable inferences, or if there is evidence tending to prove the issue. Under our jurisprudence the matter of directing a verdict as authorized by Section 2696, Rev. Gen. Stats. of Florida is a delicate one and should be cautiously exercised.

For the reasons stated, it appears to us that there was error and the judgment should be reversed. It is so ordered.

Reversed.

WHITFIELD, P. J., AND STRUM, J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.