No. 558

First Circuit

---

## POLICE JURY OF VERMILION PARISH v. MARCEAUX

---

(March 5, 1930. Opinion and Decree.)
(April 14, 1930. Rehearing Refused.)
(June 2, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

---

W. P. Edwards and J. I. Boudreaux, of Abbeville, attorneys for plaintiff, appellee.

L. A. Goudeaux, of Lake Charles, attorney for defendant, appellant.

MOUTON, J. In 1912, defendant made a donation to Vermilion parish of a strip of land for a public road running along the southern boundary of his property which is situated in section 31, township 12, south of range 1 east. Defendant claims that an old road which has been used for many years by the public along the southern line of his land takes in the strip he has donated to the parish.

The police jury, plaintiff herein, contends, on the other hand, that the strip which was donated by defendant lies north of the present old road, some 240 feet on the east end and 365 on the west end. The only issue involved in this case is therefore as to the correct location of the southern line of section 31, township 12 south, range 1 east. To determine that question, three surveys were made, by Tanner, Letz, and Broussard, and many witnesses were examined in connection therewith.

A survey of the land was made in 1876, by John P. Parson, D. S., who in reference to the south boundary line of section 31, of township 12 says in his field notes: "Set stake for temp. ¼ Sec. Cor. August. Marso's house, etc." (meaning Marceaux). Preceding that statement Parson uses these words: "On random line on south boundary of section 31."

The house referred to by Parson was built by Auguste Marceaux a few years before Parson surveyed the land, as was shown by a number of witnesses. Since the survey, the record shows it was blown

down, thereafter was converted into a barn, and is still standing within a few feet from where it was at the time of Parson's survey, in 1876. After ascertaining that it was about at the same spot, Broussard, surveyor, took the house or barn for his starting point and based his survey on the Parson survey.

Arvenne Marceaux, a brother of Auguste Marceaux, now deceased, testified that he was present when Parson made the survey. He says Parson placed some stakes along the present roadway.

Defendant also testified that three stakes had been placed there by Parson; that one had floated away, and the others had disappeared, though they were cypress posts.

Slatzman, who built a fence, about nine years after the Parson survey, for Auguste Marceaux, the original owner, along the line in question, testifies that he saw no stakes anywhere near the fence he erected. Obviously, Broussard found no remnants or evidences of these stakes and began his survey from the Marceaux house referred to in Parson's survey which he took as his guide. As a result of his work, Broussard fixed the south boundary line where the present old road runs along the land of the defendant, where defendant claims it should run.

The land in question was patented by the state of Louisiana to Auguste Marceaux, author of defendant, in September, 1876, according to the official plat of the survey of said land in the state land office. The grant of the land to Auguste Marceaux by patent was doubtless made in accordance with the official plat of survey turned in by Parson in 1876.

The principle is well settled, as contended for by counsel for defendant in the citations hereinafter noted, that the official plat of survey becomes a part of the grant or deed, and controls as to notes, lines, descriptions, and landmarks. Cragin vs. Powell, 128 U. S. 691, 9 S. Ct. 203, 32 L. Ed. 566; Houston Ice & Brewing Co. vs. Murray Oil Co., 149 La. 228, 88 So. 802; Opdenwyer vs. Brown, 155 La. 617, 99 So. 482.

If the line indicated in the Parson's survey starting from the corner of the Marceaux house established the true south boundary line of section 31, the present roadway would be as claimed by defendant on the south boundary line of his property, and as is shown in Broussard's survey. The contention of the plaintiff, on this vital point in the contest, is that this line so drawn from the Marceaux house was merely of a temporary character and at random, as it is indicated in Parson's survey.

In making their surveys, Letz and Tanner did not take the house as their starting point. They proceeded by surveying all of section 31, from its four corners, also adjoining and more distant section and township lines.

Letz says he tried to locate the south boundary line of section 31, and could find no one that knew of any old corner. The only corner he could find was the northwest corner of section 31, where he found a grate iron bar corner, and which had been known to be there for over fifty years. He proceeded in accordance with distances of the government map south from the northwest corner to the southwest corner of section 31, but could find there no corner, nor on the southeast or northeast corner of that section. He says that in running those lines he followed Parson's survey from the northwest corner of section 31, his starting point. He says he did not start from Marceaux's house because it is not usual or customary in making a sur-

vey "to tie in from any house"; that if he had surveyed from the house his line would not have "checked with anything within four miles," north, south, east or west. He says, he ran up three miles from the northwest corner and found that his survey checked within sixteen feet of the section lines running there east and west. He also ran south a mile and a quarter and found that his line checked in with other surveys.

Tanner's survey agrees with Letz's survey in every essential particular. The fact is they came practically to the same conclusion in fixing the true south boundary line of section 31.

Map P. 6, in the record, shows the south boundary line of several sections which runs east and west and continues without deviation into the south boundary line of section 31, in question. As this south boundary line of these various sections leaves the western boundary line of section 31, it runs directly in a straight line into the south boundary line of section 36, which adjoins section 31, to the west. The line claimed by defendant, where the old roadway is, runs, according to Letz's map, at the east end, 240 feet, and at the west end, 365 feet, south of the boundary line of section 31.

The adoption of the line claimed by defendant would cause a deflection in all of the southern boundary lines of these sections east and west, by a distance between 240 and 365 feet. If the line contended for is correct, all of these sectional lines are incorrect, and would have to yield to a survey which designated a house in 1876 as being the starting point for a survey on a temporary and random line.

The Supreme Court of the United States in White vs. Luning, 93 U. S. 514, 23 L. Ed. page 938, said:

"As a general rule monuments, natural or artificial, referred to in a deed control its construction, rather than courses and distances; but this rule is not inflexible; it yields whenever taking all the particulars of the deed together it would be absurd to apply it. If monuments are inconsistent with the calls for other monuments, and it is apparent from all the other particulars in the deed that they were inadvertently inserted, they will be rejected."

Here, as the survey becomes part of the grant, and has a controlling effect, it may be subjected to the reasoning of the court above quoted in applying that rule to a deed. In the present case the house mentioned in the Parson survey is the monument which defendant relies upon as being the only starting point which could have been accepted in re-surveying the line in contest. It is apparent, as we read the evidence, that from all the other particulars appearing in the surveys made by Letz and Tanner that the usual rule which recognized the control of artificial monuments in the survey of lands, must yield to the demands of the situation here presented.

Frank Emmerson Clark, of the Minnesota bar on surveying and boundaries, p. 61, section 23, in a discussion of the question of "Harmonizing Calls," has this to say:

"Usually fixed monuments control courses and distances, though instances are cited in this work where the Court, owing to the extraordinary situation, preferred the course and distance over the fixed monument."

Here, it will be noted, that the artificial monument referred to is a house, which Letz, surveyor, took occasion to say, is not usually taken as a starting point in a survey. This, we think a sensible rule because it is not a monument of a character to give any certainty of permanency that a monument ought to have to perpetu-

ate a survey of lands. We do not think that this case really presents any "extraordinary situation" to which the rule above quoted refers. It presents, however, a situation which justifies us in concluding that the survey made by Letz establishes the true southern line of section 31.

The lower court therefore properly issued the mandatory injunction asked by plaintiff ordering defendant to remove the obstructions he had placed across that line; also, correctly overruled the pleas of estoppel and prescription filed by defendant which have no merit.

LECHE, J., not participating.