No. 3767

Second Circuit

———

LOUISIANA CENTRAL LUMBER CO. v. STEPHENSON ET AL.

———

(June 2, 1930.   Opinion and Decree.)

———

C. P. Thornhill, of Coushatta, attorney for plaintiff, appellee.

Wm. H. Mecom, of Coushatta, attorney for defendants, appellants.

DREW, J. Plaintiff alleges ownership of lot 13 or northwest quarter of southwest quarter of section 10, township 11 north, range 2 east, Caldwell parish, Louisiana, together with all timber thereon, and sued J. C. Stephenson and H. E. Clark for the possession of eighty-nine sweet gum, black gum and pin-oak logs removed from said land by defendants; obtained a writ of sequestration for the logs cut and removed, and a writ of injunction restraining defendants from further cutting of the timber.

Subsequently, plaintiff filed an amended petition alleging that, in addition to the eighty-nine logs described and sued for in the original petition, the defendants had cut and removed other logs and timber aggregating 50,209 feet from said lot 13 or NW¼ of SW¼ of section 10, township 11 north, range 2 east, worth $20 per thousand. The amended petition also embraced timber alleged to have been cut on other land of plaintiff, but the amendment was only allowed as to the timber cut on the land involved in this suit.

Defendants answered, admitting that the plaintiff is the owner of lot 13, township 11, range 2 east, but denied that plaintiff is the owner of the NW¼ of SW¼ of section 10, township 11 north, range 2 east, alleging that lot No. 13 is situated in the NW¼ of SW¼ of section 10, township 11, range 2 east, and lies west of Castor bayou and along the west bank of said bayou as shown by the government township plat; alleged that defendants had acquired and owned under title set out in detail from the government down to defendants the NW¼ of SW¼ of section 10, township 11 north, range 2 east, that the timber involved here was cut from said land, and denied that the timber was worth $20 per thousand; prays for the dissolution of the writ of injunction and sequestration, for rejection of plaintiff's demands and in reconvention of $1,150 damages.

The lower court rendered judgment in favor of plaintiff decreeing it to be the owner of lot No. 13 or NW¼ of SW¼,

section 10, township 11 north, range 2 east, together with the timber thereon, and quieting plaintiff in possession of same, maintaining the writ of sequestration and injunction, decreeing plaintiff to be the owner of, and entitled to the possession of, timber sequestered, and for further judgment in the sum of $374, the value of 34,000 feet of timber cut and removed by defendants at $11 per thousand.

From this judgment defendants have appealed and plaintiff has answered the appeal, praying that the price of $11 per thousand feet be increased to $20 per thousand.

The lower court's judgment as to the number of feet of timber cut and removed by the defendant is correct, and we think the price fixed for said timber at $11 per thousand is correct. In order to disturb the price fixed for said timber, we would have to hold that defendants were in bad faith in cutting said timber, which we cannot do. His author in title is a lawyer of good standing, and is seriously contesting this case on grounds that are calculated to mislead and are at least confusing. We think defendants' author in title was in good faith and that they were also in good faith. It is true that there is evidence to show in some instances that they might not have been in good faith, but not sufficient, we think, to hold them in bad faith. This being true, there are only two remaining questions to decide in the case:

(1) Is lot No. 13 and NW¼ of SW¼ of section 10, township 11 north, range 2 east, one and the same tract?

(2) Which governs as to the location of land, the actual survey made from government field notes or the location shown on the government township plat insofar as it applies to streams?

The United States government, under the Swamp Land Act (43 USCA sec. 982 et seq.), granted to the state of Louisiana, with other lands, lot No. 13 or NW¼ of SW¼ of section 10, township 11 north, range 2 east, containing 31.37 acres.

The state of Louisiana sold to James W. Dunn by the same description, containing 31.37 acres, and by the same description the land was acquired by plaintiff's author in title, who, in selling to plaintiff, described the land as lot No. 13, section 10, township 11 north, range 2 east. Plaintiff duly recorded its deed in the conveyance records of Caldwell parish, La.

At a later date, plaintiff's author sold to W. H. Mecom by quit-claim for the consideration of $10 the NW¼ of SW¼ of section 10, township 11 north, range 2 east, containing eight acres, more or less.

It is clear by the description from the government down to plaintiff's author that lot 13 and NW¼ of SW¼ of section 10, township 11 north, range 2 east, are one and the same tract, and that, when plaintiff's author sold to it lot No. 13, he sold all he acquired when he acquired lot No. 13 or NW¼ of SW¼. And, when he sold to defendants' author, W. H. Mecom, the NW¼ of SW¼, he had nothing to sell, and Mecom acquired nothing.

Defendants contend that the government plat shows that lot 13, or NW¼ of SW¼, lies west of Castor bayou, and the land on which they cut the timber was all east of Castor bayou. The parish surveyor made a survey of this property from the original government field notes, the corners which checked by the survey, and found that Bayou Castor was nearly a quarter of a mile west of lot No. 13. The surveyor and number of other witnesses testified that there was nothing to indicate that

Bayou Castor had ever been where the government plat showed it to be.

**Which governs, the actual survey from government field notes or the plat?**

"In cases of discrepancy between lines actually marked or surveyed and those called for in maps, plats or field notes, those marked or surveyed will control. It is by the work as executed on the ground, not as projected before execution or represented on the plat afterwards, that the actual boundaries are determined." 9 Corpus Juris, p. 210, sec. 118.

"Where there is a discrepancy between field notes and a plat, the latter being made from the former, and the former being the better evidence as to where the line was run in the field, the plat must give way to the field notes." Harrington vs. Boehmer, 134 Cal. 196, 66 P. 214, 215, 489; Lillis vs. Urrutia, 9 Cal. App. 557, 99 P. 992.

There was no attempt made to show that the survey made by the parish surveyor of Caldwell parish was not correct. And the legal right to show that a government plat is erroneous in the location of a water course incorrectly shown in location, said plat being made from a survey either erroneously made or never made at all, is sustained by the jurisprudence of the United States.

"The rule that where lands are patented according to an official plat, showing meander lines along or near the margin of a body of water, the plat is to be treated as part of the conveyance and the water itself constitutes the boundary, does not apply when it is conclusively shown that no body of water exists * * * at or near the place indicated or where no attempt to survey tracts lying beyond the meander line was actually made." Jeems Bayou Club vs. U. S. (La. 1923), 260 U. S. 561, 43 S. Ct. 205, 67 L. Ed. 402; and holding further that the United States cannot be estopped to question the existence of a survey by statement made in correspondence by officials of the land department. On the first question the court held:

"The defendants rely upon the rule that where lands are patented according to an official plat of survey, showing meander lines along or near the margin of a body of water, the plat is to be treated as a part of the conveyance and the water itself constitutes the boundary. The rule is familiar and has received the approval of this court many times. Producers' Oil Co. v. Hanzen, 238 U. S. 325, 338, 59 L. Ed. 1330, 35 S. Ct. 755, and cases cited. But it is not absolute, as this court has also frequently decided. It will not be applied where, as here, the facts conclusively show that no body of water existed or exists at or near the place indicated on the plat or where, as here, there never was, in fact, an attempt to survey the land in controversy. Security Land & Exploration Co. v. Burns (Minn. 1904), 193 U. S. 167, 48 L. Ed. 662, 24 S. Ct. 425; Lee Wilson & Co. v. United States (Ark. 1917) 245 U. S. 24, 62 L. Ed. 128, 38 S. Ct. 21; Producers' Oil Co. v. Hanzen, supra; Horne v. Smith (Fla. 1895), 159 U. S. 40, 40 L. Ed. 68, 15 S. Ct. 988; French-Glenn Live Stock Co. v. Springer (Or. 1902), 185 U. S. 47, 46 L. Ed. 800, 22 S. Ct. 563; Chapman & Dewey Lumber Co. v. St. Francis Levee Dist. (Ark. 1914), 232 U. S. 186, 58 L. Ed. 564, 34 S. Ct. 297." United States Code Annotated, title 43, section 751, note 60, page 62.

The above authorities are conclusive on the subject.

The lower court found that lot No. 13 and northwest quarter of southwest quarter of section 10, township 11 north, range 2 east, are one and the same tract, and that the location of said tract of land is as located by the parish surveyor of Caldwell parish, and that it is owned by the plaintiff herein.

The judgment of the lower court is correct, and it is therefore ordered, adjudged, and decreed that the judgment be affirmed, with costs.